Health and Human Services Commission, Mr. Stapleton. Yes, Your Honor. I please the court, counsel, and thank you for the opportunity to talk today. Basically, we're addressing the issue of why Mr. Ybarra, when he pleads that he was wronged, seems to run into an alphabet soup of objections and problems that keep him from bringing forward any kind of lawsuit to the jury. And my colleague, Mr. Gonzalez, will deal with the status of the law. We believe that he threads through that needle anyway. But what I'd like to talk to you about is really the last two months of the United States Supreme Court decisions. I would urge that what we're seeing is a sea change in the way that cases are looked at, the way stare decisis is understood, and the manner in which so many things are going to be affected. I think it's going to be, I would urge, not only in civil cases like this one, but throughout the criminal practice and across the board. I'd like to start with Gandhi v. United States, because I think the most important part of that is the dissent. And in essence, what we're given, I would urge, is a roadmap for what the future's going to look like. That was a 4-4 decision with Justice Alito seeing, well, I'm not going to join in this right now, because I think he was really referring to the subject matter, which was having to do with sex offenders. But I think the standard that we're about to have established across the board is only the legislature may adopt new federal laws restricting liberty. And that each of the branches of government, 1, 2, and 3, are going to be clearly delineated on what we're looking at. That if the legislature has not passed the law and has been created either by the administrative courts, as most of the laws apparently were under the federal system now, or created by court doctrine, that they're going to be swept away, and that we're looking at something completely different. And I bring that up because I feel like it would impact Mr. Ibarra's case in particular in this matter. He has been, from the outset, dealing with the Civil Service Reform Act, which doesn't even have a right to a jury. And I would urge to you that under the current, any reading that we have of recent decisions, is that the jury right is going to be created under Hayman, for instance. It was denied for post-punishment work. But the Sixth Amendment, and by implication Seventh Amendment, that tends to be broader, is going to be protected. So I would suggest that that alone will be an issue that would have been protective of him. But beyond that, doctrines dealing with exhaustion, with doctrines dealing with matters such as qualified immunity, which really did not begin until about 1982, doctrines dealing with suspect classifications, everything that does not go to 42 U.S.C. 1983 and 1985, read those on their plain language to see what the rights may be, or to the Fifth Amendment to be read in their plain language of the Fourteenth Amendment, or based on what the original intent was before those, that they're all going to be gone. And that we, I would urge, did not have a clear indication of that until the last, really, six weeks of decisions. But at this point, when we combine that dissent, which by all indications, even with the present makeup of the Court, will soon be law, with the privileges and immunities of citizens clause that was discussed by Justice Thomas in McDonald v. Chicago, and then the new case that just came out with Department of Commerce v. New York, which, it's a census case, but makes clear the judicial review is now going to be preserved under the Administrative Procedure Act. I think all the administrative acts are going to be giving us judicial review. Under Hayman, which I urge is going to expend the right to a jury trial in virtually every case with the concept that this Court is the upper body, juries are the lower body, just like the Senate and the House. Juries will have their power. Under Kaiser v. Wilkie, which was the PTSD, where the Veterans Administration's rule was swept away in order to allow ex-Marine Kaiser to bring his PTSD claim, that we're going to see changes in that. In Nick v. Township v. Scott, in which the Fifth Amendment itself comes directly into play without concern for eminent domain exhaustion rules, giving an immediate right upon the taking. And then out of May, Nieves v. Bartlett, who were told that First Amendment free speech cases, 14th Amendment cases, we look to the law and the doctrines that existed at the time that those were adopted, that they're going to be there. We of course, because of the newness of all this, we haven't had a chance to present it to the trial court or to brief it for this Court, but I would urge that Mr. Bartlett and Mr. Ibarra's rights to have his day in court are going to be much influenced by the last six weeks of Supreme Court decisions. And I'll now ask Mr. Gonzales to talk about more specifically what those rights are under current law. Okay, Mr. Gonzales. May it please the Court. Your Honor, Your Honors, I'd like to start off by addressing Mr. Ibarra's Bivens claims and why the Civil Service Reform Act does not provide him an adequate remedy. It is our contention that even under the standards set in Abbasi, Mr. Ibarra should receive a Bivens remedy. We would like to bring the Court's attention to a case that we did not cite in our brief, but a case out of the D.C. Circuit, Burrell v. International Communications Agency, where the D.C. Circuit found that a former federal probationary employee had a remedy under Bivens. Now, Judge Higginbottom, you were on a panel that cited to this opinion back in the 80s in Towers. In that opinion, Towers v. Horner, you cited to this opinion stating where newly enacted statutory remedies are unavailable to a clear, sorry, where newly enacted statutory remedies are unavailable to a particular segment of employees, the Supreme Court appears to have imposed a kind of clear statement requirement on Congress, requiring it to indicate explicitly its intent to displace judicially created remedies for constitutional deprivations. Now, I'm very aware of Abbasi and how the Supreme Court has said that Bivens is a disfavored remedy and that they seem to have clearly, they don't want to extend this remedy to new contexts. Now, in this case, I don't think that the facts in this case, I don't believe are, can be stated to be a new context. And the case that I cite to is Davis-Passman, in which a congressman's employee just was left out categorically from the Title VII. And she had, the Court found a gender that was a judicially, well, an implied remedy under the Constitution, under the Fifth Amendment in that case. But the Court found a Fifth Amendment remedy for her. And in this case, I believe that Mr. Ibarra is similarly situated to that. I really don't believe that this because the Civil Service Reform Act leaves him out. And I'll tell you that even if, even under the current, well, Civil Service Reform Act, it's been hard to get through for me, but I believe that it even is, it was amended to include the Whistleblower Protection Act. I think it was in the late 80s. But former employees theoretically have a remedy under the Civil Service Reform Act. And remember, the facts of this case, he testified against his direct supervisor while he was employed by the federal government. But the retaliation didn't happen until he was a state employee. And so I think this fact pattern creates the same type of fact pattern in Passman, where the statute, the Civil Service Reform Act, just leaves him out. Why? Because if you look at the Civil Service Reform Act, you'll find that, you'll find that the real, see, the Civil Service Reform Act was meant to streamline the grievance process for federal employees. Okay? Now, he was, and a lot of former employees fall into that category, because they get fired for various reasons, right? And so, the remedies that the Office of Special Counsel, and later the Merits Protection Board, what they can do is reinstate the employee. And that remedy is allowed, and within the federal government's jurisdiction. If the Civil Service Reform Act is applied in this case, we'd have a Tenth Amendment issue. It's my argument that we'd have a Tenth Amendment issue, because he can't, the federal government can't reinstate a state employee. And so that's, those are my, you know, to conclude, I don't believe that the Civil Service Reform Act is applicable to this case, to the facts in this particular case, and that Bivens remedy is not necessarily new context. I'd like to move on to, quickly, to address standards set by the trial court. I believe that the trial court, I'll skip to the gender Title VII claim, I believe that the title, the trial court used the wrong standard. It's our position that Sicilies, which was decided and we threw in a 28-J to supplement our brief, Sicilies makes clear that there are two ultimate elements, and that Swarzwindig, and I probably butchered that, but Swarzwindig applies in this context because we're claiming that there is a, we're claiming that there is circumstantial evidence and that the reasons that they've offered is just a pretext, or that gender may have been a part of this termination decision. Now, this is, again, applying only to the State defendants. Just to, I have 30 seconds, just to comment on our 1983 case. We stand by our pleadings, and we believe that we've nudged this forward so that we can go into discovery, because all this is in the, all the evidence that we would like to know about would be in the possession of the State or the Federal Government. And I'd just like to cite to one case, Culbertson, which we supplemented our brief, and a panel in Culbertson, I think, Judge Southwick, you were on this panel, but found that, found that retaliation, retaliation of the, the retaliatory campaign was endorsed by other actors, and therefore found an actionable case under, at least in the 26th statute. Thank you. Thank you, Mr. Gonzales. Mr. Lyles. May it please the Court, I represent the State defendants, and I'll explain why Ibarra fails to plead fact, rendering either his sex discrimination claim or his First Amendment retaliation claim plausible, and why his 1983 civil conspiracy claim is barred as a matter of law. I'll go through them in that order. With respect to Ibarra's sex discrimination claim, the operative complaint pleads no connection between Ibarra's termination and his membership in a protected class. All it does is allege that a female colleague of his communicated her belief to Ibarra's supervisor that he had problems with female authority. It doesn't plead any facts detailing that or threshing it out or supporting it. It just references an e-mail sent from that supervisor that relates how Ibarra's colleague described how he was being very unprofessional in meetings, carrying and showing his personal handgun, standing over interviewees in a way that intimidated them. Nothing that shows any kind of, you know, and further, even if he had pled fact showing this relation to the supervisor of, you know, this belief that he had problems with female authority, that wouldn't ground a sex discrimination claim either. I mean, both men and women can have problems with female authority. Now, moving on to Ibarra's First Amendment retaliation claim, he fails to plead any facts showing that anyone at HHSC had any awareness or knowledge of his prior testimony before the feds two years ago. He alleges that four separate communications took place between the feds and THHSC. The problem with those, though, is that the first conversation he alleges took place before he testified to the feds, so clearly it could not have contained a reference to the testimony. The third and fourth conversation he alleges took place after he was terminated from HHSC, meaning that that could not have been a substantial motivating factor in his termination. The only conversation that he alleges took place between his federal testimony and his termination, he cabins to including only talk of how he was terminated. Which I take as excluding any mention of the testimony, if he goes into that finely grained detail and those other two things. At any rate, he doesn't allege that that one conversation included mention of his testimony. Further, I would submit that as a matter of law, that conversation, even if he did allege it had included mention of testimony, came too far in time before his termination to be a substantial motivating factor. The window he says it happened in is a three-month window running from when he was hired until he was fired. And the Supreme Court in Clark County School District v. Breeden made clear that to count as a motivating factor, the knowledge of the public speech has to come to the employer very, very close in time to when they take their allegedly retaliatory action. With respect to Ibarra's 1983 claim, his civil conspiracy claim, that's barred as a matter of law. This court has said over and over again that to be a candidate for the class-based animus that that claim requires, the class you allege has to be a racial class. Ibarra has not alleged he's a member of any kind of racial class. He's alleged he's a member of the whistleblower class, which is clearly not a racially-based class. And the most recent decision on that in this circuit was Doctors Hospital v. Oropalupus from 2001. To address the supplemental authority that Ibarra brings up, he filed his first round of it, which included the Cialessi case on, I believe, July 1st. And that case is distinguishable from the case at hand because in Cialessi, there were comments, derogatory comments about the ethnicity of the plaintiffs who were Italians that the plaintiffs alleged. And the court decided that the analysis of whether those derogatory comments by the plaintiff's supervisor was whether they just constituted stray remarks or whether they were evidence of discrimination were best left to the summary judgment stage, not the 12B6 stage. In this case, Ibarra alleges no facts that any kind of derogatory comments or anything were made about him or towards his sex. So it's wholly distinguishable. With respect to the Culberson case that Ibarra files for his First Amendment retaliation claim, he filed that on Friday. I read it this morning. And that case is distinguishable because the meetings that were alleged by the plaintiff to have taken place, in which the plaintiff claimed that the old employer relayed to the new employer the fact that the plaintiff had testified against the old employer, the plaintiff clearly says that. He says that the testimony was discussed in meetings. The testimony came out in the newspaper. So the substance of the testimony being relayed to the new employer is clearly pled there, and it's not pled at all in this case. If there are no questions, I request that you affirm, and I concede my time. Thank you, Mr. Lyles. Thank you, Your Honor. Masso? May it please the Court? My name is Nancy Masso. I represent the federal appellees in this case, Jorge Perry, Fernando de Luna, Mario Gomez. All three have been named as defendants in their individual capacities, and all three are employees of the United States. In this case, on appeal, Mr. Ybarra has raised two issues that impact the federal appellees, or at least the claims that have been lodged against them. One is Bivens. The District Court dismissed the Bivens case because they failed to state a claim upon which relief can be granted. And the second relates to the 1985-3 claims that the plaintiff raised. And the District Court, like with the Bivens case, said they have not stated a claim upon which relief can be granted, so therefore, we're dismissing those claims. Today, counsel has brought up that the Civil Service Reform Act is not an adequate remedy for his client. This issue has been discussed in brief in the Court below, and I think that it's just very important, and I'm sure that the Court knows this, that Bivens is not to be taken lightly, not just from the perspective of the plaintiff, not just from the perspective of the defendants. It's a judicially created remedy, and as such, the Abbasi Court, just a couple years ago, reinforced and underlined, we disfavor this remedy. And we will only ask, or we will caution you very strongly, and ask that before you extend Bivens beyond what we've already recognized as the context, which is Fourth Amendment, which isn't here, which is the Due Process Clause of the Fifth Amendment, which isn't here, which is the Cruel and Unusual Punishment Clause of the Eighth Amendment, which is not here, before you go beyond that, you have to determine whether any special factors exist that would caution you from going beyond and extending Bivens. In this case, as we argued with the Court below, one example is the Civil Service Reform Act. It's pretty obvious from the complaint and the allegations that Mr. Ybarra made, that these allegations against my clients are a result of his employment relationship with the federal government before he started working for the state of Texas. Now, Mr. Ybarra has said that he can't seek redress under the Civil Service Reform Act, suggesting because he's a former employee. Your Honors, I submit that this circuit in 1983 under Carroll v. U.S. recognized that former employees are, in fact, covered under the Civil Service Reform Act. There is nothing to stop him from availing himself of this Act. The problem that he has is the adequacy of the remedy. But as the Supreme Court has pointed out and has been pointed out by the courts below, it is not necessarily the adequacy of the remedy that is available or could be available to any one person in a specific instance. It's the comprehensiveness of the statutory scheme that's made available that allows for a general context for redress. And as such, because we have that existing under the Civil Service Reform Act, Bivens is precluded. Likewise, there's potential for a Privacy Act claim to be made here to the extent that Mr. Ybarra says that we gave false information to third parties. In fact, Congress has provided two comprehensive statutory schemes by way of which a plaintiff such as Mr. Ybarra could avail himself. The issue of whether it is an adequate scheme is something that this Court has been cautioned not to delve into. The important thing is that Congress has availed itself or has availed these schemes to folks like Mr. Ybarra. The second point that was raised on appeal was the applicability of Mr. Lyles touched upon it in his argument, and it's the same here with the Federal Defendants. We have a conspiracy that's been alleged here where one of the elements requires that there be a showing that it was motivated by discriminatory animus based on race or some other inherited or immutable class of characters. In the record at page 174, Mr. Ybarra pled that he would be a part of a class of individuals who testify against their employer for wrongful actions conducted by their employer, a whistleblower. This circuit in Bryant said whistleblowers are not a protected class under 1985-3. Your Honor, I submit that the District Court's decision should be affirmed in all aspects, and if the Court has any questions, I'd be happy to answer them. Mr. Stapleton, you save time for rebuttal. Yes, Your Honor. The urging that we would make is that there's got to be some remedy for this wrong, and I think that that's what we're looking at as far as what I believe is going to be a new view of how the law is dealt with. All of the concepts that the government relies on to exclude Mr. Ybarra from court are court-created concepts. I think we're going to be returning to the original language of the Fifth Amendment and to 1983 and 1985 for attorney's fees and 1985-3 for the claims. Mr. Stapleton, as you know, the Supreme Court has been very stern in telling us that we're not supposed to anticipate what that court might do in the future, but only to apply what the court has already said. So that's what we will do here, whichever way that goes in terms of your case. But we're not just going to pull a rabbit out of the hat and say, well, the Supreme Court's about to announce X, Y, or Z, so we're going to proclaim that. I know, Your Honor. What I'm asking is that it be sent back so that we can develop these issues in the trial court and see if we can give you a record to work with. We think we've got a client that deserves a remedy and that there shouldn't be a complete barrier to a remedy with a wrong of this nature, that he's the sort of employee that we want to encourage to call out illegal activity, and that's what we're asking for, that we get a chance to work with the court and then be able to bring them back to you. I anticipate it'll be a little bit down the road, but I think we're going to see some changes. And I think, I hope I'm not delusional about that, but it looks pretty clear to me that the last six weeks or two months of decisions are a clear indicator. Thank you, Your Honor. That's it for today. Bank of the West v. Prince.